**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| Jacqueline A. Beatty, | ) | |
| | ) | Case No. 13 B 39206 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | Judge Carol A. Doyle |
| Deborah Kanner Ebner, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 14 A 00757 |
| | ) | |
| Elizabeth H. Beatty and | ) | |
| Emily M. Beatty, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Deborah Ebner, the trustee in the chapter 7 bankruptcy case of Jacqueline Beatty, filed an adversary proceeding against Jacqueline's daughters, Elizabeth Beatty and Emily Beatty. The trustee seeks to avoid and recover an allegedly fraudulent transfer of a death benefit that Elizabeth and Emily received from the retirement plan of their father, Judge Joseph Beatty. The trustee filed a motion for summary judgment; Elizabeth and Emily filed a cross-motion for summary judgment. The parties agree that no material facts are disputed. They ask the court to resolve the controlling legal question: whether Jacqueline held an interest in a benefit payable from the Judges' Retirement System of Illinois based on the judgment entered in their divorce proceeding when no Qualified Illinois Domestic Relations Order ("QILDRO") was entered, no written consent was signed by Judge Beatty, and no QILDRO or consent form was served on the

1

retirement system. Under a provision of the Illinois Constitution and the Illinois QILDRO statute, no enforceable interest in the benefit was transferred to Jacqueline so the trustee has no valid claim for a fraudulent transfer of that interest. The court will therefore grant Elizabeth and Emily's motion for summary judgment and deny the trustee's motion for summary judgment.

I.   Facts and Background

The facts are straightforward and uncontested. Jacqueline was married for many years to Judge Joseph Beatty, who became an Illinois state court judge in 1983. They divorced in 2009. In May 2009, the Circuit Court of Rock Island County, Illinois entered a Judgment of Dissolution of Marriage that dissolved the marriage. In July 2009, a Supplemental Judgment of Dissolution was entered providing for the division of the parties' assets. The Supplemental Divorce Judgment states that Jacqueline "is awarded the widow's annuity to the petitioner's judicial pension, which petitioner has been advised is approximately $63,000." No other order regarding Jacqueline's rights in Judge Beatty's retirement assets was ever entered by the state court.

A number of years before the divorce, Judge Beatty designated Elizabeth and Emily as the beneficiaries of a death benefit payable under his retirement plan. He never changed this beneficiary designation. He also never signed any written consent to changing the beneficiary of the death benefit to Jacqueline. No court order of any kind or written consent by Judge Beatty was ever sent by any party to the retirement fund administrator prior to his death. Judge Beatty died on April 14, 2013. Ten days later, an attorney representing his estate sent a letter to the Judges' Retirement System requesting that the "survivor annuity contribution component" of

Judge Beatty's pension be paid to Elizabeth and Emily. In the letter, the attorney disclosed the terms of the divorce judgment but stated that no QILDRO required to transfer an interest in the pension was ever entered so Jacqueline was not entitled to the money. The Judges' Retirement System agreed and paid the death benefit to Elizabeth and Emily, who each received one-half of the $63,492.61 benefit.

Jacqueline testified in a deposition in this case that she was not represented by an attorney during her divorce proceeding and that she did not participate in any discussion about how the marital assets would be divided. The Judgments of Dissolution confirm that she did not participate in the divorce proceedings. Jacqueline acknowledged that the two judgments were mailed to her. She also testified that she called the Illinois Judges' Retirement System after Judge Beatty's death. She was told that she was not entitled to the benefit because the proper documentation had not been filed and that the proceeds would be paid to her daughters. She testified that she took no further action.

Jacqueline was insolvent when the Judges' Retirement System issued the checks to Elizabeth and Emily. She filed this chapter 7 bankruptcy case in October 2013, approximately six months after Judge Beatty's death.

II.     Fraudulent Transfer

The trustee filed this adversary proceeding against Elizabeth and Emily alleging that the payments they received from the Judges' Retirement System were fraudulent transfers under 11 U.S.C. §§ 544, 548(a)(1)(B) and 550. The trustee now seeks summary judgment on her claim under § 548(a)(1)(B), which allows a trustee to avoid a transfer of a debtor's interest in property

3

made within two years of the bankruptcy petition date if the debtor received less than a reasonably equivalent value in exchange for the transfer and was insolvent on that date. A plaintiff seeking avoidance of a fraudulent transfer under § 548(a)(1)(B) must prove the following: (1) a transfer of the debtor's property or interest; (2) made within two years before the bankruptcy petition was filed; (3) for which the debtor received less than a reasonably equivalent value in return; and (4) the debtor was insolvent on the date of the transfer or became insolvent as a result. *See In re Kimball Hill, Inc.*, 2012 WL 5880657, at *5 (Bankr. N.D. Ill. Nov. 19, 2012); *In re Grube*, 2012 WL 3263905 (Bankr. C.D. Ill. Aug. 9, 2012); *In re Randy,* 189 B.R. 425, 440 (Bankr. N.D.Ill. 1995).

The parties do not dispute that Jacqueline was insolvent when the Judges' Retirement System paid Elizabeth and Emily the death benefit. Elizabeth and Emily also do not appear to dispute that the payment could potentially fall within the definition of "transfer," even though Elizabeth and Emily did not receive any assets directly from Jacqueline. A "transfer" for purposes of § 548(b) includes the "direct or indirect, absolute or conditional, voluntary or involuntary, ... disposing of or parting with ... an interest in property." 11 U.S.C. § 101(54).

The parties do dispute, however, whether Jacqueline ever held any interest in the death benefit in the first place. Jacqueline's right, if any, to the benefit is governed by Illinois law. *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15, 20 (2000)*; Butner v. United States*, 440 U.S. 48, 55 (1979*); Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 598 (7th Cir. 2012)*; Rameker v. Peterson (In re Assoc. Enterprises, Inc.)*, 234 B.R. 718, 724 (Bankr. W.D. Wis. 1999).

III.    Transferring Rights under Illinois Retirement Systems

Judge Beatty served as a state court judge beginning in 1983 and participated in the Judges' Retirement System of Illinois, which was created by state statute. 40 ILCS 5/18-101 *et seq*. A "member" who participates in the Judges' Retirement System has rights created by statute and the Illinois Constitution.

Article XIII, Section 5 of the Illinois Constitution protects state pension rights from creditors. It provides that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." The Illinois QILDRO statute, which became effective in 1999, governs the distribution of rights under state retirement systems in divorce proceedings and contains a provision specifically addressing this constitutional provision. 40 ILCS 5/18-101 *et seq.*

The QILDRO statute gives Illinois domestic relations courts the authority to direct payment of state retirement benefits to a person other than the regular payee - an "alternate payee." 40 ILCS 5/1-119 (West 2006); *see Rafferty-Plunkett v. Plunkett*, 392 Ill. App. 3d 100, 103, 910 N.E.2d 670, 673 (3rd Dist. 2009), *appeal den.*, 233 Ill.2d 599, 919 N.E.2d 365 (2009). Section 119(b)(1) of the statute provides that an Illinois court "may order" that all or any part of a member's benefit, including a death benefit, that would otherwise be payable to the member's designated death benefit beneficiaries or estate be paid instead by the retirement system to an alternate payee. 40 ILCS 5/1-119(b)(1). These orders must take the form of a "Qualified Illinois Domestic Relations Order" or "QILDRO," which is defined as an "Illinois court order that creates or recognizes the existence of an alternate payee's right to receive all or a portion of the

member's accrued benefits in a retirement system ... and meets the requirements of this Section." 40 ILCS 5/1-119(a)(6).

The statute provides that a QILDRO "must contain the name, mailing address, and social security number of the member and of the alternate payee and must identify the retirement system to which it is directed and the court issuing the order." 40 ILCS 5/1-119(c)(1). The QILDRO "must specify each benefit to which it applies, and it must specify the amount of the benefit to be paid to the alternate payee," 40 ILCS 5/1-119(c)(2). It must also state when the order will take effect. 40 ILCS 5/1-119(c)(2). Under section 119(d)(1), any QILDRO issued under section 119 "*shall not be implemented*" unless a certified copy of the QILDRO has been filed with the retirement system. 40 ILCS 5/1-119(d)(1) (emphasis added).

Section 119(m) contains additional protections for members who began participating in the retirement system before the effective date of the QILDRO statute to comply with the constitutional provision discussed above. It requires the written consent of the member before an alternate payee is entitled to payment under a QILDRO. Section 119(m)(1) provides:

> In accordance with Article XIII, Section 5 of the Illinois Constitution, which prohibits the impairment or diminishment of benefits granted under this Code, a QILDRO issued against a member of a retirement system established under an Article of this Code that exempts the payment of benefits or refunds from attachment, garnishment, judgment or other legal process *shall not be effective* without the written consent of the member if the member began participating in the retirement system on or before the effective date of this Section. That consent must specify the retirement system, the court case number, and the names and social security numbers of the member and the alternate payee. The consent must accompany the QILDRO when it is filed with the retirement system, and must be in substantially the following form.

40 ILCS 5/1-119(m)(1) (emphasis added). The statute then provides a detailed form for the member's consent. Section 119(n) similarly provides that a QILDRO issued under this statute "shall be in substantially the following form," after which a detailed QILDRO form is provided

6

for disclosing all the information required in sections 119(a)-(d) discussed above.[1]

Thus, an order for the payment of a death benefit available under the Judges' Retirement System to an alternate payee is not effective unless *all* of the following occurs:

1. A QILDRO in substantially the form provided in section 119(n) must be entered by an Illinois court that states the name, address, and social security number of both the member and the alternate payee. The order must specifically describe the benefit in question, the amount of the benefit, and the effective date of the entitlement.

2. A member who participated in the retirement system prior to 1999 must sign a written consent in substantially the form provided in section 119(m)(1), which identifies the retirement system, the court case number, and the names and social security numbers of the member and the alternate payee.

3. A certified copy of the QILDRO and the member's consent form must be filed with the retirement system.

In this case, none of these essential requirements has been met. First, no order that even resembles a QILDRO was ever entered. The Supplemental Judgment is the only document that attempts to give Jacqueline an interest in the death benefit. It falls far short of the requirements of a QILDRO. Paragraph 6 of the Supplemental Judgment provides as follows:

> The respondent [Jacqueline] is awarded the widow's annuity to the petitioner's judicial pension, which petitioner has been advised is approximately $63,000.

---

[1] The Judges' Retirement System posts a detailed guide to QILDROs that clearly explains how to obtain rights in a member's benefits, which was available to Jacqueline and any other interested party. *See* https://www.srs.illinois.gov/Judges/qildroforms_jrs.htm.

> The respondent shall have no further interest in the petitioner's State of Illinois judicial pension, other than a widow's annuity.

The Supplemental Judgment does not contain the social security number or address of either the member (Judge Beatty) or the alternate payee (Jacqueline). It also does not specifically identify the benefit in question. Instead, it refers to a "widow's annuity." There is no benefit entitled a "widow's annuity" under the Judges' Retirement System. *See* 40 ILCS 5/18-101 *et seq.* The statute provides for a survivor's annuity, which could be paid to a current spouse or children who qualify, not an ex-spouse, and it is indeed an annuity - defined in section 113 as periodic payments - not a lump sum payment like the amount described in the Supplemental Judgment. 40 ILCS 5/18-128/01. Section 129 of the article creating the Judges' Retirement System provides that when a member dies with no spouse or other beneficiary eligible for an annuity, the designated beneficiary may obtain a refund of the member's contributions toward the survivor's annuity. 140 ILCS 5/18-129. This appears to be the $63,000 lump sum benefit described in the Supplemental Judgment. Thus, the judgment did not even correctly identify the benefit at issue. It also does not specify the effective date of the entitlement. The only requirements of a QILDRO met by the Supplemental Judgment are providing the name of the member and alternate payee, and the approximate amount of the benefit. No QILDRO in substantially the form required by section 119 was ever entered.

Second, Judge Beatty never signed a written consent of any type, let alone in substantially the form required by section 119(n). To the contrary, Judge Beatty's failure to designate Jacqueline as the beneficiary for this benefit suggests a lack of consent. Third, no certified copy of a valid QILDRO or written consent form was ever served on the Judges' Retirement System.

Thus, under section 119(m)(1), no transfer to Jacqueline of the right to the death benefit was effective because no written consent was ever signed by Judge Beatty.  In addition, under Section 119(d)(1), no transfer to Jacqueline could be "implemented" because there was no valid QILDRO, and thus no certified copy of a valid QILDRO was served on the Judges' Retirement System.  Therefore, under the plain language of the Illinois Constitution and the QILDRO statute, Jacqueline never held an enforceable interest in the death benefit.  That benefit was properly paid to the designated beneficiaries at the time of Judge Beatty's death:  Elizabeth and Emily.  Since Jacqueline had no interest in this benefit, the trustee has no viable claim for a fraudulent transfer of it.

IV.    Trustee's Arguments

The trustee makes a number of arguments to avoid the requirements of the Illinois Constitution and the QILDRO statute, none of which is persuasive.

A.    Vesting of Retirement Assets Allocated in Divorce Judgment

First, the trustee contends that Jacqueline's right to the death benefit "vested" when the Supplemental Judgment was entered.   The trustee cites two cases for this proposition: *In re Marriage of Hackett*, 113 Ill. 2d 286, 497 N.E.2d 1152 (1986), and *Bigelow v. Brown (In re Brown)*, 168 B.R. 331 (Bankr. N.D. Ill. 1994).  Neither case is controlling here.  *Hackett* did not address when state pension assets vest in connection with a divorce judgment.  Instead, it held that pension rights that accrued during a marriage are marital property that can be divided by a divorce court.  *Hackett* was decided more than a decade before the QILDRO statute was enacted, so it provides no guidance relevant to the issue in this case.

9

In *Brown*, a bankruptcy court held that pension rights are marital property under Illinois law, and that ownership vests in the spouse to whom the property was distributed upon entry of the divorce judgment, even if a Qualified Domestic Relations Order ("QDRO") required under federal law for private pensions was not entered until after the bankruptcy petition was filed. *Brown*, too, was decided long before the QILDRO statute became effective and it involved a private pension, not a state pension, so it provides no guidance on how the QILDRO statute or Illinois Constitution should be applied to the state pension in this case.

The court also notes that to the extent the *Brown* court held that the right of a nonmember spouse to a portion of the member spouse's pension "vests" under Illinois law when a divorce judgment is entered, so the pension rights are then owned only by the non-member spouse, it is not persuasive. The *Brown* court cited *In re Marriage of Roehn*, 216 Ill. App. 3d 891, 894, 576 N.E.2d 560, 562 (2nd Dist. 1991) for this proposition, but *Roehn* held that a trial court could *not* order a public pension system to pay an alternate payee directly. In fact, as noted in *In re Marriage of Menken*, 334 Ill. App. 3d 531, 534, 778 N.E.2d 281, 297 (2nd Dist. 2002), the QILDRO statute was enacted after *Roehn* to permit issuance of orders naming an alternate payee for pension benefits but only if the member signs a written consent. The *Menken* court recognized that the QILDRO statute was enacted to protect the constitutional rights of a pensioner, and that any attempt to diminish its effect "should not be taken lightly." *Id*. It therefore held that a trial court did not have authority to force a member of a retirement system to sign a consent form to effectuate a division of retirement assets in a divorce judgment. Thus, the *Roehn* decision relied upon in *Brown* does not provide a basis for concluding that a non-member spouse acquires a right to payment under an Illinois retirement system merely by entry

10

of a divorce judgment.

Another court also rejected the *Brown* court's conclusion on this issue as not well-grounded in Illinois law.  In *Steele v. Heard (In re Heard)*, 487 B.R. 302 (S.D. Ala. 2013), the court concluded that, under Illinois law, a non-employee spouse who was awarded a portion of her husband's pension was not "vested" with a right to payment of the benefit upon entry of the judgment of dissolution when no QILDRO order was entered and her ex-husband refused to consent to entry of such an order.  Instead, the husband, not the pension fund, owed his wife the money so the pension payments were part of the husband's bankruptcy estate.  487 B.R. at 315.  In reaching its conclusion, the *Heard* court found that *Brown* was not persuasive authority regarding Illinois law on the effect of divorce judgments.

The trustee points out that the *Heard* court cited Illinois decisions stating that a non-member spouse becomes a "co-owner" of expected future pension benefits upon dissolution of the marriage.  *Heard*, 497 B.R. at 311-12, n. 15; *citing In re Marriage of Richardson,* 381 Ill. App.3d 47, 884 N.E.2d 1246 (1st Dist. 2008); *In re Marriage of Roehn*, 216 Ill. App. 3d at 894, 576 N.E.2d at 563.  As the *Heard* court explained, however, these cases stand for the "unremarkable proposition" that pension benefits are marital property that can be divided just like any other property, even when the benefits will accrue in the future.  487 B.R. at 312.  Also, the benefits described as "co–owned" in *Richardson* and *Roehn* were ongoing monthly pension payments payable to the member during his lifetime.  In this case, the death benefit at issue could not possibly have been "co-owned" by Jacqueline and Judge Beatty because Judge Beatty never had a right to be paid the benefit during his lifetime, so he never "owned" the benefit in the first place.  Thus, *Richardson* and *Roehn* do not control on the issue in this case - whether entry of a

divorce judgment can transfer a death benefit to an alternate payee without compliance with the QILDRO statute.

By arguing that, under Illinois common law, Jacqueline became the "owner" of the death benefit when the Supplemental Judgment was entered without any need to comply with the QILDRO statute, the trustee is really arguing that general common law principles control over the Illinois Constitution and the QILDRO statute. The opposite is true. A principle of common law cannot be applied to contravene a specific statutory provision, nor can it trump rights created by the Illinois Constitution. *See, e.g., Vancura v. Katris*, 352 Ill.2d 352, 377, 939 N.E.2d 328, 344 (2010); *Michigan Ave. Nat. Bank v. County of Cook*, 191 Ill.2d 493, 519, 732 N.E.2d 528, 543 (2000). The QILDRO statute, which effectuates a constitutional provision, expressly governs the precise issue before the court. Common law principles cannot be used to nullify those statutory and constitutional provisions. Thus, while ordinary property may "vest" under Illinois common law upon entry of a divorce judgment that divides the marital property, rights in Illinois public pensions covered by the QILDRO statute cannot be transferred without substantial compliance with the requirements for a valid QILDRO and a written consent when it is required under section 119(m)(1).

The trustee cites no case decided after the enactment of the QILDRO statute holding that a divorce judgment awarding to a non-member spouse a benefit payable to a designated beneficiary upon the death of a member was "vested" and enforceable by the non-member spouse simply upon entry of the divorce judgment without substantial compliance with the requirements of the QILDRO statute. One Illinois court concluded that the necessary consent under section 119(m)(1) could be provided by the member's consent to entry of an order

Case 14-00757   Doc 32   Filed 10/13/15   Entered 10/13/15 13:30:17   Desc Main
          Document      Page 13 of 16

effectuating a marital settlement agreement. *See Rafferty-Plunkett v. Plunkett*, 392 Ill. App. 3d 100, 910 N.E.2d 670 (3rd Dist. 2009). In this case, however, there was no such settlement agreement. Jacqueline did not participate in her divorce proceeding so there was no marital settlement agreement to implement, and thus no argument that Judge Beatty provided the required consent even under the less strict standard applied in *Rafferty* (which is inconsistent with the provisions of section 119). Under the plain language of the QILDRO statute and the Illinois Constitution, without entry of a valid QILDRO and service on the retirement system of the QILDRO and a written consent from Judge Beatty, no transfer of the right to the death benefit was made to Jacqueline merely by the entry of the Supplemental Judgment.

The court notes that even assuming, as the trustee argues, that a right to obtain the death benefit "vested" in some way in Jacqueline when the Supplemental Judgment was entered, any right to obtain payment of the death benefit expired at the time of Judge Beatty's death. Under the Illinois Constitution and the QILDRO statute, the most Jacqueline could have obtained upon entry of the Supplemental Judgment was a right to seek a QILDRO and written consent. As discussed above, the Judges' Retirement System was required to pay the designated beneficiaries at the time of his death because no alternate payee was designated under a valid QILDRO and written consent. Thus, once Judge Beatty died, whatever right in the death benefit that Jacqueline could potentially have acquired through the Supplemental Judgment expired because of her failure to comply with Illinois law for replacing a designated beneficiary. *See In re Marriage of Norfleet*, 243 Ill. App. 3d 925, 612 N.E.2d 939 (4th Dist. 1993) (ex-wife was not entitled to 401(k) benefit under Illinois law regarding effect of divorce judgments when no QDRO required under federal law was entered to divest the designated beneficiary of the 401(k)

13

before the death of the ex-husband).

A trustee may not use a fraudulent transfer action to revive a right that expired before the petition date. As the Seventh Circuit held in *Sullivan v. Willock (In re Wey)*, 854 F.2d 196 (7th Cir. 1988), "[p]ossession of expired rights is the equivalent of the possession of no rights." The *Wey* court held that the extinguishment of a right is not a transfer for purposes of § 548. *See also In re LiTenda Mortgage Corp.*, 246 B.R. 185, 191 (Bankr. D.N.J. 2000) *aff'd*, 276 F.3d 578 (3d Cir. 2001) (pre-petition termination of a contract pursuant to its terms and the consequent cessation of a debtor's rights under a contract does not constitute a transfer within the meaning of § 548). Thus, in this case, even if Jacqueline acquired a right to take steps to obtain the death benefit when the Supplemental Judgment was entered, any right that she held expired when Judge Beatty died. At that point, no consent could be obtained and the designated beneficiaries were legally entitled to the benefit. Thus, even accepting the trustee's premise that Jacqueline acquired some type of interest in the death benefit when the Supplemental Judgment was entered, the trustee still may not recover the benefit from Elizabeth and Emily.

B. Survivor's Annuity versus Death Benefit

The trustee also argues that it is "questionable" whether the QILDRO requirement even applies in this case to the "widow's annuity lump sum benefit." She suggests that this benefit may be a "survivor's benefit" to which the QILDRO requirements do not apply under section 119(b)(4). This argument also fails.

As noted above, there is no "widow's annuity" or "widow's annuity lump sum benefit" available under the Judges' Retirement System. A "survivor's annuity" is available only to a

surviving spouse, which is defined as a person married to a member at the time of the member's death or a child of a member young enough or otherwise entitled to receive an annuity.  40 ILCS 5/18-128.  Jacqueline was not married to Judge Beatty when he died, and Elizabeth and Emily were not eligible to receive a survivor's annuity as his children, presumably because they were over 22 years of age and not disabled at the time of his death.  Therefore, no survivor's annuity was payable under the retirement system.  Instead, upon the death of a member, the designated beneficiary is entitled to a refund of the amounts paid by the member to fund a survivor's annuity.  40 ILCS 5/18-129(c).[2]  This refund would be in the form of a lump sum payment payable upon the death of the member.

Section 119(b)(4) provides that "a QILDRO does not apply to or affect the payment of any survivor's benefit," but that term is defined as "any *periodic* benefit payable to a surviving spouse, child, parent, or other survivor . . . ."  40 ILCS 5/1-119(a)(11) (emphasis added).  The benefit at issue in this case is a lump sum, not a periodic payment, so it does not fit within the exception to the QILDRO requirements for "survivor's benefit."  Instead, it falls squarely within the definition of a "death benefit," which is defined as a nonperiodic benefit payable upon the death of a member to a survivor of the member, the member's estate, or a designated beneficiary, and specifically includes "any refund of contributions following the member's death, whether or not the benefit is so called under the applicable Article of this Code."  40 ILCS 5/1-119(a)(2).  Thus, a survivor's annuity refund payment is a "death benefit" to which the QILDRO

---

[2]Section 129(c) of the code creating the Judges' Retirement System provides: "Upon the death of an annuitant where no spouse or other beneficiaries eligible for an annuity survive, the designated beneficiary or estate shall receive a refund of the contributions made for the survivor's annuity, without interest."  40 ILCS 5/18-129(c).

requirements apply.

V.      Conclusion

The trustee could prevail in this case only if the Illinois Constitution and almost every requirement of the QILDRO statute for conveying an interest in a benefit provided under an Illinois pension system is ignored. Jacqueline did nothing to comply with the requirements of the QILDRO statute, and Judge Beatty never gave the required consent. Jacqueline therefore never acquired an interest in the lump sum benefit that ultimately was paid to her daughters. The trustee is not entitled to recover the money for the bankruptcy estate. Summary judgment will be granted in favor of Elizabeth and Emily and against the trustee.

Dated: October 13, 2015

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge